**No. 2016-2249**

# In the
# United States Court of Appeals
# for the Federal Circuit

REMBRANDT GAMING TECHNOLOGIES, LP,

*Plaintiff-Appellant,*

v.

BOYD GAMING CORPORATION; WMS GAMING INC.; LVGV, LLC,

*Defendants-Appellees,*

NEW CASTLE CORP.; RAMPARTS, INC.; MANDALAY CORP.; CIRCUS CIRCUS CASINOS, INC.; VICTORIA PARTNERS; BELLAGIO, LLC; MGM GRAND HOTEL, LLC; THE MIRAGE CASINO-HOTEL; NEW YORK-NEW YORK HOTEL & CASINO, LLC; ARIA RESORT & CASINO HOLDINGS, LLC; CAESARS ENTERTAINMENT OPERATING COMPANY, INC.,

*Defendants.*

---

Appeal from the United District Court
for the District of Nevada, Case No. 2:12-cv-00775-MMD-GWF.
The Honorable **Miranda M. Du**, Judge Presiding

## BRIEF OF DEFENDANTS-APPELLEES

TIMOTHY C. MEECE
V. BRYAN MEDLOCK, JR.
MICHAEL J. HARRIS
AUDRA C. EIDEM HEINZE
BANNER & WITCOFF, LTD.
Ten South Wacker Drive
Suite 3000
Chicago, IL 60606
Telephone: (312) 463-5000

PATRICK M. MCCARTHY
HOWARD & HOWARD
ATTORNEYS PLLC
2950 S. State St., Ste. 360
Ann Arbor, MI 48104
(734) 222-1483

DAVID P. ENZMINGER
WINSTON & STRAWN LLP
275 Middlefield Rd., Ste. 205
Menlo Park, CA 94025
(650) 858-6500

*Counsel for Defendants-Appellees*
*Boyd Gaming Corporation; WMS Gaming Inc.; and LVGV, LLC*



## INCLUSION OF PATENT CLAIMS

This appeal relates to claim 32 of U.S. Patent No. 6,641,477 (the "'477 patent"). Claim 32 is reproduced below with the disputed limitation highlighted in bold and italicized font (Appx23 at 12:36-55):

32.    A method of operating an electronic gaming apparatus having a plurality of symbols arrayed in multiple symbol columns and rows on its monitor comprising the steps of:

selecting initial symbols to be arrayed in said multiple symbol columns and rows;

displaying the initial symbols selected in an array of multiple symbol columns and rows on said monitor after a display of a simulated spinning motion;

***designating a chosen number, from one to all, of said initial displayed symbols for replacement***;

selecting said chosen number of replacement symbols;

replacing said chosen number of initial symbols on said monitor with replacement symbols after the display of a simulated spinning motion;

determining whether said replacement symbols and any remaining initial symbols arrayed in said multiple symbol columns and rows constitute a winning combination; and,

rewarding a winning combination.

i

## CERTIFICATE OF INTEREST

Counsel for Defendants-Appellees Boyd Gaming Corporation, WMS Gaming Inc., and LVGV, LLC certifies the following:

1.    The full name of every party or amicus represented by us is:

>  WMS Gaming Inc.
>  Boyd Gaming Corporation
>  LVGV, LLC

2.    The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by us is:

>  WMS Gaming Inc.
>  Boyd Gaming Corporation
>  LVGV, LLC

3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by us are:

>  WMS Gaming Inc.: WMS Industries Inc. and Scientific Games Corp.
>  Boyd Gaming Corporation: None
>  LVGV, LLC: None

4.    The names of all law firms and partners or associates that appeared for the party or amicus now represented by us in the trial court or agency or are expected to appear in this court (and who have not or will not enter an appearance in this case) are:

>  J. Randall Jones, Jennifer Dorsey, and Spencer H. Gunnerson of Kemp, Jones & Coulthard, LLP; Jenna W. Logoluso and David K. Lin of Winston & Strawn LLP; and Christopher Galfano of Banner & Witcoff, Ltd.


Date:  February 3, 2017          /s/ Timothy C. Meece
                                 Timothy C. Meece
                                 *Attorney for Defendants-Appellees*

# TABLE OF CONTENTS

**PAGE**

INCLUSION OF PATENT CLAIMS ...................................................................... i

CERTIFICATE OF INTEREST ............................................................................ ii

TABLE OF CONTENTS........................................................................................ iii

TABLE OF AUTHORITIES ................................................................................. vi

STATEMENT OF RELATED CASES .................................................................. ix

STATEMENT OF THE ISSUES............................................................................1

STATEMENT OF THE CASE................................................................................2

    I.    NATURE OF THE CASE ............................................................................2

    II.    STATEMENT OF FACTS ..........................................................................4

        A.    The '477 Patent and Its Specification .........................................4

            1.    The patent relates to electronic slot machines.................4

            2.    The specification criticizes prior art slot machines as "games of chance" because a player has little to no involvement in the outcome of the game .........................5

            3.    The specification provides a single solution: an electronic slot machine "game of skill" where a player designates initial displayed symbols for replacement.........................6

            4.    The specification repeatedly describes the "present invention" as a whole as requiring a player to designate initial displayed symbols for replacement.........................9

            5.    Every embodiment in the specification requires a player to designate initial displayed symbols for replacement..10

            6.    The specification provides no description of any embodiments where a slot machine designates initial displayed symbols for replacement, nor does it disclose how a slot machine would even go about doing so........12

        B.    The '477 Patent's Prosecution History .....................................13

            1.    The inventor represented his alleged invention requires a player to designate initial displayed symbols for

replacement even though his original application claims did not include the word "player" ...................................13

2.  The inventor added the claim at issue in this case and argued that a player's "freedom of choice" to designate any number of initial displayed symbols for replacement is the "important difference" between his claim and the prior art .............................................................................17

3.  The Patent Office allowed the claim at issue in this case because the inventor agreed to limit the claim to requiring a player to designate at least one initial displayed symbol for replacement...................................21

4.  The inventor continued to prosecute other claims to obtain the broader scope of allowing a player to choose to designate "none" of the initial displayed symbols for replacement....................................................................22

C.  The '477 Patent's *Ex Parte* Reexamination.............................23

1.  The examiner rejected claims 1, 32, and 34 ...................23

2.  The PTAB affirmed the rejection of claims 1 and 34, but reversed the rejection of claim 32....................................24

D.  The District Court Proceedings.................................................27

1.  The District Court correctly construed "initial symbols" and Rembrandt does not dispute that on appeal .............27

2.  The District Court correctly held the "designating" step does not have an "individual" or "single" symbol replacement limitation and Rembrandt does not dispute that on appeal..............................................................28

3.  The District Court correctly held the "designating" step requires a player, not the slot machine, to designate at least one initial displayed symbol for replacement ........29

4.  The District Court correctly entered final judgment of non-infringement ...........................................................29

5.  Defendants-Appellees' motion to declare this case exceptional for an award of attorneys' fees and costs is pending at the District Court ..........................................30

SUMMARY OF THE ARGUMENT ....................................................30

ARGUMENT ...................................................................................................32

I.  THE DISTRICT COURT CORRECTLY CONSTRUED THE "DESIGNATING"
    STEP IN CLAIM 32 TO REQUIRE THAT A PLAYER, NOT THE SLOT
    MACHINE, DESIGNATES INITIAL DISPLAYED SYMBOLS FOR
    REPLACEMENT....................................................................................32

    A.  The Ordinary Meaning of the "Designating" Step, when Read
        in the Context of the Intrinsic Evidence, is Limited to a Player
        Designating Initial Displayed Symbols for Replacement.........32

    B.  The Specification also Contains a Clear and Unmistakable
        Disclaimer Requiring a Player to Designate Initial Displayed
        Symbols for Replacement .......................................................42

    C.  The Prosecution History also Contains a Clear and
        Unmistakable Disclaimer Requiring a Player to Designate
        Initial Displayed Symbols for Replacement ...........................46

II. THE DISTRICT COURT CORRECTLY ENTERED FINAL JUDGMENT OF NON-
    INFRINGEMENT ...................................................................................60

CONCLUSION ...............................................................................................61

# TABLE OF AUTHORITIES

## Cases

*Absolute Software, Inc. v. Stealth Signal, Inc.*,
    659 F.3d 1121 (Fed. Cir. 2011)...........................................................45

*Alloc v. Int'l Trade Comm'n*,
    342 F.3d 136 (Fed. Cir. 2003)............................................................47

*Bell Atl. Network Servs. v. Covad Commc'ns Group, Inc.*,
    262 F.3d 1258 (Fed. Cir. 2001)..........................................................47

*Biogen Idec, Inc. v. GlaxoSmithKline LLC*,
    713 F.3d 1090 (Fed. Cir. 2013)................................... 46, 47, 48, 49

*Cephalon, Inc. v. Abraxis Bioscience, LLC*,
    618 F. App'x 663 (Fed. Cir. 2015) ....................................................60

*Chimie v. PPG Indus.*,
    402 F.3d 1371 (Fed. Cir. 2005)..........................................................48

*Computer Docking Station Corp. v. Dell, Inc.*,
    519 F.3d 1366 (Fed. Cir. 2008)................................................. 46, 47

*Cuozzo Speed Techs., LLC v. Lee*,
    136 S. Ct. 2131 (2016) .......................................................................58

*Curtiss-Wright Flow Control Corp. v. Velan, Inc.*,
    438 F.3d 1374 (Fed. Cir. 2006)................................................. 38, 39

*David Netzer Consulting Eng'r LLC v. Shell Oil Co.*,
    824 F.3d 989 (Fed. Cir. 2016)............................................................42

*Decisioning.com, Inc. v. Federated Dep't Stores, Inc.*,
    527 F.3d 1300 (Fed. Cir. 2008)..........................................................36

*Elkay Mfg. Co. v. Ebco Mfg. Co.*,
    192 F.3d 973 (Fed. Cir. 1999)................................................... 46, 49

*GPNE Corp. v. Apple Inc.*,
    830 F.3d 1365 (Fed. Cir. 2016)........................................... 35, 39, 40

*Honeywell Int'l, Inc. v. ITT Indus., Inc.*,
    452 F.3d 1312 (Fed. Cir. 2006)............................................................43

*In re Rembrandt Technologies*,
    1:07-md-1848 (D. Del.), ECF No. 951 ...............................................30

*Microsoft Corp. v. Multi–Tech Sys., Inc.*,
    357 F.3d 1340 (Fed. Cir. 2004)............................................................47

*Omega Eng'g, Inc. v. Raytek Corp.*,
    334 F.3d 1314, 1323 (Fed. Cir. 2003)........................................... 46, 47

*Pacing Techs., LLC v. Garmin Int'l, Inc.*,
    778 F.3d 102 (Fed. Cir. 2015).......................................................32, 42

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005)............................................. 32, 33, 46

*Regents of Univ. of Minn. v. AGA Med. Corp.*,
    717 F.3d 929 (Fed. Cir. 2013)..............................................................42

*Rembrandt Gaming Techs. LP v. Boyd Gaming Corp.*,
    No. 2:12-CV-775-MMD-GWF, 2015 WL 7573192 (D. Nev. Nov. 24, 2015) ....3

*Retractable Techs., Inc. v. Becton, Dickinson & Co.*,
    653 F.3d 1296 (Fed. Cir. 2011)............................................................40

*Schriber–Schroth Co. v. Cleveland Trust Co.*,
    311 U.S. 211 (1940) .............................................................................48

*SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*,
    242 F.3d 1337 (Fed. Cir. 2001)............................................................43

*St. Clair Intellectual Prop. Consultants, Inc. v. Canon Inc.*,
    412 F. App'x 270 (Fed. Cir. 2011) ......................................................59

*Trustees of Columbia Univ. v. Symantec Corp.*,
    811 F.3d 135 (Fed. Cir. 2016).............................................................32

*UltimatePointer, L.L.C. v. Nintendo Co.*,
    816 F.3d 816 (Fed. Cir. 2016)............................................. 33, 35, 36

*Verizon Servs. Corp. v. Vonage Holdings Corp.*,
   503 F.3d 1295 (Fed. Cir. 2007)..............................................................43

*Vitronics Corp. v. Conceptronic*, Inc.,
   90 F.3d 1576 (Fed. Cir. 1996).................................................... 33, 43

**Statutes**

35 U.S.C. § 102 ....................................................................................26

35 U.S.C. § 103 ....................................................................................15

## STATEMENT OF RELATED CASES

One other appeal in or from the same civil action in the lower court was previously before this Court, Docket No. 2016-2002, which was dismissed on June 29, 2016.  No other appeal in or from the same civil action in the lower court was previously before this or any other appellate court.

Defendants-Appellees' counsel are unaware of any case pending in this or any other court that will directly affect or be directly affected by this Court's decision in the pending appeal.

## **STATEMENT OF THE ISSUES**

1.     Did the District Court correctly construe the "designating" step in claim 32 to require a player, as opposed to the slot machine, to designate initial displayed symbols for replacement, where (i) the ordinary meaning of the "designating" step, when read in the context of the intrinsic evidence, is limited to a player designating initial displayed symbols for replacement, (ii) the specification contains a clear and unmistakable disclaimer requiring a player to designate initial displayed symbols for replacement, (iii) the prosecution history contains a clear and unmistakable disclaimer requiring a player to designate initial displayed symbols for replacement, and (iv) the specification provides no disclosure of how a slot machine can designate an initial symbol without player involvement?

2.     Did the District Court correctly enter final judgment of non-infringement where Rembrandt conceded it could not, as a matter of law, prove that Defendants-Appellees' accused slot machines infringe claim 32 in view of the District Court's correct construction of the "designating" step?

## STATEMENT OF THE CASE

### I.   NATURE OF THE CASE

Rembrandt filed this lawsuit against Defendants-Appellees asserting claims 32 and 34 of the '477 patent.  (Appx30.)  The Patent Office initiated an *ex parte* reexamination of claims 1, 32, and 34, and the District Court stayed the lawsuit pending the outcome of the reexamination.  (Appx1485-1503; Appx265.)

The Patent Office rejected the claims in the reexamination.  (Appx581-619.)  On appeal, the Patent Trial and Appeal Board (the "PTAB") affirmed the rejection of claims 1 and 34, but reversed the rejection of claim 32.  (Appx1125-1137.)

After the reexamination, the lawsuit continued at the District Court with Rembrandt asserting only claim 32.  (Appx1-9; *see also* Appx1210-1212.)  The parties disputed the construction of two claim limitations: "initial symbols" and the "designating" step. (Appx4.) With respect to the "designating" step, the "main point of contention" between the parties was who or what designates initial displayed symbols for replacement.  (Appx6.)  Defendants-Appellees contended that, in view of the intrinsic evidence, the claim requires a ***player*** to designate initial displayed symbols for replacement.  (*Id.*)  Rembrandt contended the slot machine designates initial displayed symbols for replacement.  (*Id.*)

The District Court determined that a player, not the slot machine, must designate initial displayed symbols for replacement.   (Appx1-9.)   *See also*

*Rembrandt Gaming Techs. LP v. Boyd Gaming Corp.*, No. 2:12-CV-775-MMD-GWF, 2015 WL 7573192 (D. Nev. Nov. 24, 2015). The District Court's construction is correct because (i) the ordinary meaning of the "designating" step, when read in the context of the intrinsic evidence, is limited to a player designating initial displayed symbols for replacement, (ii) the specification also contains a clear and unmistakable disclaimer requiring a player to designate initial displayed symbols for replacement, and (iii) the prosecution history also contains a clear and unmistakable disclaimer requiring a player to designate initial displayed symbols for replacement. (*Id.*) Moreover, the intrinsic record contains no disclosure whatsoever to suggest the inventor conceived of designation of initial displayed symbols by the slot machine without player designation.

The District Court's correct construction of the "designating" step is case dispositive because it is undisputed that a player of Defendants-Appellees' accused slot machines cannot designate any symbols for replacement, let alone initial displayed symbols. (Appx326; Appx1816-1819.) Consequently, after the District Court entered its claim construction order, Rembrandt stipulated to final judgment of non-infringement and filed this appeal challenging the District Court's construction of the "designating" step. (Appx1816-1819; Appx10-11.)

3

## II.    STATEMENT OF FACTS

This appeal centers on claim construction.  Rembrandt, however, provides only a superficial analysis of the intrinsic evidence, ignoring portions that are the most damaging to its case.  Defendants-Appellees provide the following full review of the intrinsic evidence.

### A.    The '477 Patent and Its Specification

#### 1.    The patent relates to electronic slot machines

The alleged invention relates to slot machines.  (Appx18 at 1:9-10.)  Slot machines are gaming machines that allow players to "wager a sum of money and have the opportunity to win greater sums of money."  (Appx18 at 1:19-23.)

The specification describes two types of slot machines: mechanical slot machines and electronic slot machines.  (Appx18 at 1:24-2:4.)  In a mechanical slot machine, "the player inserts a bill or coin and pulls down on the slot machine handle to initiate the game."  (Appx18 at 1:25-27.)  This causes rotatable physical reels "with an assortment of fruit, number and/or bar symbols" to spin until each physical reel reaches a resting position.  (Appx18 at 1:27-30.)  The "success or failure of the game is then determined by comparing the combination of reel symbols across a horizontal row with a table of winning combinations."  (Appx18 at 1:30-33.)

Electronic slot machines are generally similar to mechanical slot machines, except they use video monitors to display an imitation of rotatable reels, rather than having physical reels like mechanical slot machines.  (Appx18 at 1:46-49.)

Electronic slot machines "simulate the rotation of a physical reel, but typically select the final symbols through use of random numbers generated by a microprocessor rather than any physical rotation of a reel." (Appx18 at 1:49-53.) The "final symbols for each simulated reel in the electronic slot machine are randomly selected by the microprocessor and then displayed on the video monitor at the appropriate time and position." (Appx18 at 1:53-56.)

### 2. The specification criticizes prior art slot machines as "games of chance" because a player has little to no involvement in the outcome of the game

The named inventor of the '477 patent, Michael Dietz ("Dietz"), did not invent mechanical slot machines or electronic slot machines. (Appx18 at 1:19-2:30.) The specification criticizes prior art slot machines, both mechanical and electronic, because "the combination which is finally displayed along their betting line may fall just short of a winning combination and the player has no opportunity for adjusting the displayed combination, short of completely starting a new game." (Appx18 at 2:5-10.) In other words, the problem with prior art slot machines, according to the specification, was that they provided "games of chance," as opposed to "games of skill" where a player is involved in the outcome of the game. (Appx18 at 1:19-23 and 2:26-30.)

The specification also criticizes other prior art attempts to address this alleged problem with slot machines. (Appx18 at 2:11-14.) The specification explains that

some prior art slot machines "allow a player to 'nudge' one of the reels so that the displayed symbol is moved one notch and replaced by an adjacent symbol on the reel which is visible to the player." (*Id.*) The "success or failure of the game is then redetermined based upon the combination appearing after one of the reels has been 'nudged.'" (Appx18 at 2:15-17.) According to the specification, however, this prior art "nudging feature" does not fully address the problem with prior art slot machines because it does not provide enough player involvement to reclassify a slot machine from a "game of chance" to a "game of skill." (Appx18 at 2:18-30.)

> **3.    The specification provides a single solution: an electronic slot machine "game of skill" where a player designates initial displayed symbols for replacement**

The specification provides a solution – and only one solution – to the alleged problem of prior art slot machines being "games of chance." The solution is an electronic slot machine that provides a game of skill. (Appx18 at 1:9-15.) More particularly, the alleged invention is an electronic slot machine that "allows *players* to select for respin one or more of the symbols displayed after the machine's first spin." (*Id.* (emphasis added).)[1] This "feature allows the player to get a second chance at creating, improving or even losing a winning combination." (*Id.*)

-----

[1] Defendants-Appellees refer to the symbols that are displayed after a slot machine's first spin or draw as the "initial displayed symbols." That is consistent with the District Court's construction of "initial symbols," which Rembrandt does not appeal. (*See* Statement of Facts Section II.D.1 at page 27.)

The preferred embodiment is shown in Figures 1 and 2, reproduced below. (Appx13; Appx14; Appx19 at 3:27-29 and 4:1-4.)  Figure 1 "shows a front view of a preferred form of electronic second spin slot machine of the present invention." (Appx19 at 2:12-13.)   Figure 2 "shows a typical video screen display for the electronic second spin slot machine of Figure 1."  (Appx19 at 2:14-15.)



| **Fig. 1 of the '477 patent (Appx13)** | **Fig. 2 of the '477 patent (Appx14)** |

The video screen display, or video monitor, is labeled 30 in the Figures. (Appx19 at 4:1-2.)  The video monitor has a plurality of symbol display boxes, labeled 32 in Figure 2, arrayed in rows and columns.  (Appx19 at 4:2-4.)  Each symbol display box shows a symbol, labeled 34 in Figure 3, in the center of the

display box.  (Appx19 at 4:5-7.)

A player initiates game play by pressing a spin button, labeled 22 in Figure 1. (Appx20 at 5:9-10.)  The slot machine simulates a spinning motion in all of the display boxes.  (Appx20 at 5:10-12.)  At the same time, the slot machine randomly selects initial symbols that will be displayed after the simulated spinning motion. (Appx20 at 5:15-34.)  Once the slot machine has randomly selected the initial symbols, the slot machine stops the simulated spinning motion and displays the initial symbols in the display boxes.  (Appx20-21 at 6:66-7:3.)

The slot machine then indicates "that the player has an opportunity to respin one or more of the display boxes or stand with the combination displayed after the first spin."  (Appx21 at 7:5-8.)  The "player is given the opportunity to touch one or more of the display boxes 32, rows of display boxes 32 or columns of display boxes 32 which he wants changed and press the respin box 62 on the video monitor which acts as a switch to initiate the respin."  (Appx21 at 7:9-13.)

After the player designates initial displayed symbols for replacement and presses the respin box, the slot machine again simulates a spinning motion "in those boxes and only those boxes" that the player designated for replacement.  (Appx21 at 7:37-40.)  The "non-designated boxes will continue to display their first spin results in stationary form."  (Appx21 at 7:41-42.)  During the simulated spinning motion, the slot machine randomly selects replacement symbols that will replace the initial

displayed symbols the player designated for replacement. (Appx21 at 7:42-46.) After the slot machine randomly selects the replacement symbols, the slot machine stops the simulated spinning motion and displays the replacement symbols in the boxes that the player designated for replacement. (Appx21 at 7:61-64.)

Finally, the slot machine compares the symbols displayed on the video monitor (*i.e.*, the combination of the replacement symbols and the initial displayed symbols the player did not designate for replacement) to the predetermined combination of winning symbols stored in the slot machine's memory. (Appx21 at 7:65-8:3.) If the symbols displayed result in a winning combination, the slot machine determines the amount the player has won and credits or pays the player that amount. (Appx21 at 8:3-25.)

### 4. The specification repeatedly describes the "present invention" as a whole as requiring a player to designate initial displayed symbols for replacement

The specification describes the "present invention" as a whole several times. Each time, it describes the "present invention" as requiring a ***player*** to designate initial displayed symbols for replacement. For example, in the "Technical Field of the Invention" section, the specification describes the "present invention" as allowing "players to select for respin one or more symbols displayed after the machine's first spin." (Appx18 at 1:9-15.) In the "Summary of the Invention" section, the specification again describes the "present invention" as allowing a

9

"player to completely respin one of more of the symbols displayed after the first spin in order to create, improve or even lose a winning combination." (Appx18 at 2:34-37.) In the "Description of the Specific Embodiments" section, the specification once again describes the "present invention" as a whole as a player designating initial displayed symbols for replacement, and even states that the "present invention" requires the "player to think in multiple dimensions." (Appx21 at 8:36-46.)

### 5. Every embodiment in the specification requires a player to designate initial displayed symbols for replacement

The specification describes several embodiments in its "Description of Specific Embodiments" section. (Appx19-22.) Every embodiment requires a *player* to designate initial displayed symbols for replacement. (*Id*.) For example, the preferred embodiment, detailed above in Section II.A.3, states a "player is given the opportunity to touch one or more of the display boxes 32, rows of display boxes 32 or columns of display boxes 32 which he wants changed." (Appx21 at 7:9-13.)

The slot machine in another embodiment provides multiple rounds of respinning symbols, as opposed to one round like the preferred embodiment. (Appx21 at 8:50-63.) This embodiment requires a player to designate initial displayed symbols for replacement, providing that "[w]ith such multiple rounds, the player could view the results of the first respin round and choose additional display boxes to be respun in a second round." (Appx21 at 8:56-58.) As a variation of this "multiple rounds" embodiment, a player may designate initial displayed symbols for

replacement and then additional respins may occur automatically if the replacement symbol is the same as the initial displayed symbol the player designated for replacement.  (Appx18-19 at 2:65-3:6.)

In another embodiment, "color backgrounds could be added to each of the symbol boxes" to serve as "additional criteria for respinning to achieve winning combinations."  (Appx19 at 3:6-9.)  In this embodiment, a player may designate both initial displayed symbols and background colors for replacement.  (Appx21 at 7:26-36.)

The specification also discloses an embodiment without a second spin.  (Appx22 at 9:9-11.)  This embodiment similarly requires a player to designate initial displayed symbols for replacement, providing that the player is "given the opportunity to touch two different symbols from the first spin display and switch their position."  (Appx22 at 9:11-18.)  Alternatively, "a tenth randomly generated symbol could be added to the display shown in FIG. 2 and the player given the opportunity to substitute this tenth symbol for one of the other nine symbols."  (*Id.*)

The specification also includes a catch-all provision for other possible embodiments.  All of the examples in the catch-all require a player to designate initial displayed symbols.  (Appx22 at 9:19-37.)  For example, the specification provides that "[f]urther examples of such modifications include allowing the player to designate which symbols to keep rather than designate which symbols to respin"

and "[i]n a further modification of the embodiment where the player can choose only one box for respin, the apparatus of the present invention could also respin all other boxes which have the same full symbol as the one box chosen for respin." (*Id*.)

**6.    The specification provides no description of any embodiments where a slot machine designates initial displayed symbols for replacement, nor does it disclose how a slot machine would even go about doing so**

The specification does not disclose a single embodiment where the slot machine designates initial displayed symbols for replacement without player involvement. (Appx12-24.)  The specification also does not provide any disclosure, or any written description, explaining how a slot machine itself, without player involvement, would determine which initial displayed symbols to designate for replacement. (*Id*.)  For example, the specification does not provide any algorithms, flow charts, code logic, diagrams, source code, software, or any directions or guidance on which initial displayed symbols the slot machine should designate for replacement without player involvement to achieve the stated objective of allowing "the player to get a second chance at creating, improving, or even losing a winning combination." (Appx18 at 1:14-15.)  That would have been a critical aspect of the disclosure if – as Rembrandt now contends – the alleged invention is for a slot machine that designates initial displayed symbols for replacement.

B.    The '477 Patent's Prosecution History

1.    **The inventor represented his alleged invention requires a player to designate initial displayed symbols for replacement even though his original application claims did not include the word "player"**

Dietz's original application included 30 claims.  (Appx761-765.)  During prosecution, he added application claims 31-36, with application claim 33 corresponding to issued claim 32 at issue here.  (Appx1008-1013.)

Original application claims 1 and 18 recited methods of operating an electronic slot machine, each with a "designating" step that did not include the word "player."  (Appx761-763.)  The examiner issued a first office action on November 3, 1999, rejecting Dietz's claims as anticipated by U.S. Patent No. 5,356,140 to Dabrowski ("Dabrowski") and as anticipated by U.S. Patent No. 5,393,061 to Manship ("Manship").  (Appx937-941.)

Dietz responded to the office action on May 3, 2000.  (Appx945-955.)  Dietz characterized Dabrowski as disclosing a "video poker game" where "two poker hands are simultaneously dealt with one hand superimposed upon the other" and the "player then chooses which hand to play and 'the unselected hand is voided or removed from use.'"  (Appx950.)  Dietz distinguished his alleged invention from Dabrowski by arguing that his "invention is *not* directed to a video poker game but rather a variation of the popular electronic slot machine."  (*Id*.)  To clarify that distinction, Dietz amended his claims to require that the monitor displays a plurality

13

of symbols "arrayed in multiple symbol columns and rows." (*Id.*)  According to Dietz, that amendment distinguished his alleged invention because the video poker game of Dabrowski "does not have a plurality of symbols 'arrayed in multiple symbol columns and rows.'" (*Id.*)

Dietz characterized Manship as disclosing "a slot machine game having display colors" and a "Fever Mode" where "display colors are enhanced and the payout table is changed." (Appx950.)  Dietz continued that "[l]ike other common slot machines, there is no provision in the Manship patent for allowing the player to select one or more symbols after the initial spin for replacement." (Appx950.) Dietz further argued the slot machine in Manship "is entirely a game of chance whereas Applicant's respin slot machine involves an important element of skill (*i.e.*, choosing which slot machine symbols to replace)." (Appx950.)

In other words, even though his claims did not include the word "player," Dietz's response to the examiner's rejection was premised on his claims requiring that the ***player*** designate initial symbols for replacement. (*Id.*; *see also* Appx761-765.)  Tellingly, in contrast to the amendments Dietz made to distinguish over Dabrowski, Dietz did not amend his claims in his response to this first office action to include the word "player" because it was understood that his claims required player designation. (Appx945-955.)  Thus, Dietz represented to the Patent Office and the public from the very outset of prosecution that his alleged invention is not a

game of "chance," but rather a game of "skill" that requires a player to designate initial displayed symbols for replacement even though the word "player" was not in the claims.  (*Id*.)

The examiner responded with a second office action on July 18, 2000.  (Appx960-968.)  Regarding Dabrowski, the examiner noted that although Dietz argued his alleged invention is not directed to a video poker game, the words of his claims were broad enough to "read on a video poker slot gaming system." (Appx966.)  In contrast, with respect to Manship, the examiner accepted Dietz's argument that his alleged invention is a game of "skill" requiring a player to designate initial displayed symbols for replacement.  (*Id*.)

The examiner withdrew the anticipation rejections, but proceeded to reject Dietz's claims under 35 U.S.C. § 103(a) as unpatentable over Dabrowski in view of Manship.  (Appx963-964.)  In short, the examiner combined the "game of skill" features of Dabrowski with the electronic slot machine features of Manship.  (*Id*.)

Dietz responded to the second office action on January 10, 2001.  (Appx969-980.)  Dietz's response was again premised on his claims requiring the ***player*** to designate initial symbols for replacement.  (*Id*.)  He differentiated his claims from the combination of Dabrowski and Manship by explaining that his alleged invention allows a player to designate "individual" or "single" initial displayed symbols for replacement, in contrast to allowing a player to designate only entire rows or

15

columns of initial displayed symbols for replacement. (Appx974.) To attempt to clarify that distinction, Dietz amended his claims to add a "from none to all" limitation to the "designating" step. (Appx969-971.)

In other words, Dietz argued his alleged invention differed from the prior art because his alleged invention allows a player to choose a full range of initial displayed symbols for replacement, from "none" of the initial displayed symbols to "all" of them. (*Id*.) To support that argument, Dietz submitted a declaration to the Patent Office in which he represented that, before coming up with his alleged invention, he was not aware of any slot machines that "allowed the player to individually respin symbols displayed after the first spin in order to achieve a better combination of symbols. (Appx981.)

In response, the examiner issued a final office action on April 10, 2001. (Appx988-996.) The examiner explained that Dietz's claim amendment of "from none to all" did not capture Dietz's alleged distinction over the prior art of allowing a player to designate "individual" or "single" initial displayed symbols for replacement, as opposed to entire rows or columns. (Appx994.) Moreover, the examiner explained that Dietz's claim amendment of "from none to all" did not distinguish his claims over Dabrowski and Manship. (*Id.*) That is, if a player designates "none" of the symbols for replacement after an initial spin, that is no different than Dabrowski and all other prior art slot machines. (*Id*.)

The examiner and Dietz conducted an interview on July 11, 2001. (Appx997-1000.) During the interview, Dietz proposed amending his claims to include claim limitations found in a parent patent in order to capture the "individual" or "single" symbol replacement that the examiner found were not covered by Dietz's addition of "from none to all" to the claim language. (*Id*.) The examiner directed Dietz to file a request for continued examination. (*Id*.)

> **2.    The inventor added the claim at issue in this case and argued that a player's "freedom of choice" to designate any number of initial displayed symbols for replacement is the "important difference" between his claim and the prior art**

Dietz filed a request for continued examination on October 10, 2001. (Appx1001-1023.) Dietz amended the claims originally filed with his application "to better conform, as applicable, with the wording of the allowed claims" in a parent patent by clarifying that the symbols are "separate boxes." (Appx1013-1014.) Dietz argued this amendment captured the concept of allowing a player to designate "individual" or "single" symbols for replacement (as opposed to a player designating entire rows or columns). (Appx1013-1015.) Dietz did not add the word "player" to the original application claims at this time, nor was there any reason to do so, because Dietz had already repeatedly and consistently represented, and the examiner had already accepted, that a player designates initial displayed symbols for replacement in Dietz's alleged invention.

Dietz also added new claims 31-36 "to recite additional differences between

[his] novel slot machine game and the video poker games of the prior art."
(Appx1013.)  Dietz, however, did not include in these new claims the "separate
boxes" limitation that Dietz added to the original application claims.  (Appx1008-
1013.) Instead, new application claims 31 and 32 added that "a winning combination
is determined by assessing whether particular symbols are aligned horizontally,
vertically, diagonally or in another geometric pattern which matches a
predetermined winning combination"; new application claims 33 and 34 added that
a "simulated spinning motion is made before symbols are displayed"; and new
application claims 35 and 36 added that "the symbols are arrayed so as to appear to
be on a plurality of vertical reels."  (*Id*.)

The examiner issued an office action on January 2, 2002.  (Appx1025-1033.)
With respect to the original application claims, the examiner explained that although
Dietz added the "separate boxes" limitation to those claims, the claims were not
patentable over the prior art because they still included the "from none to all"
language.  (Appx1031.)  The examiner again explained that if a player designates
"none" of the initial displayed symbols for replacement, that is no different than all
prior art slot machines.  (*Id*.)

With respect to the new application claims 31-36, the examiner similarly
rejected those claims because they also included the "from none to all" claim
language.  (Appx1028-1031.)  Moreover, the examiner explained that the additional

18

limitations included in the new claims 31-36 were all taught by Dabrowski in view of Manship, and were "indigenous, well-known feature[s] of slot machines." (Appx1028.)

The examiner then recommended how Dietz could amend all of his claims to distinguish over Dabrowski and Manship. (Appx1031-1032.) Specifically, the examiner recommended changing "none to all" to "at least one to all." (*Id*.) The examiner also recommended how Dietz could amend all of his claims to capture the concept of allowing a player to designate "individual" or "single" initial displayed symbols for replacement (as opposed to a player designating entire rows or columns of initial displayed symbols for replacement). (Appx1031-1032.) The examiner recommended that Dietz amend his claims to require the "respin of symbols that are in the separate boxes." (Appx1032.)

Dietz conducted an examiner interview on June 19, 2002. (Appx1040-1041.) During the interview, Dietz argued all of his independent claims (which includes application claim 33 that issued as claim 32) were patentable because the prior art slot machines do not allow a player "to choose to replace" from "none to all" of the initial displayed symbols for replacement. (Appx1041.)

Dietz thereafter submitted a response and amendment on July 2, 2002, further elaborating on the arguments he made during the examiner interview. (Appx1043-1065.) Dietz argued that "the wording proposed [by the examiner] would not capture

[his] true invention." (Appx1058.)  Regarding the examiner's recommendation of adding "respin of symbols that are in the separate boxes" to all the claims, Dietz argued it would be "technically inaccurate" to speak of "respinning" because his alleged invention is for an electronic slot machine, not a mechanical slot machine, and the symbols in an electronic slot machine "are not really 'respun' in the sense of a mechanical wheel spinning." (*Id.*)

Regarding the examiner's recommendation of changing "none to all" to "at least one to all," Dietz argued this recommendation is of "greater significance" because it is "unduly limiting." (*Id.*) Dietz continued that "while some slot machine prior art references allow a player to 'nudge' a slot machine stepper reel or respin all, and only all, of the displayed symbols, none of the slot machine prior art allowed the player to individually pick and choose from [Dietz's] range of replacement capabilities." (Appx1058-1059.)  Dietz continued that, in his alleged invention, at one end of the range "the player could chose [*sic*] no symbols for replacement" and at the other end of the range "the player could choose all of the symbols for replacement." (Appx1059.)  Between these ends, Dietz argued, "the player could choose many combinations of individual symbols for replacement." (*Id.*) Dietz then expressly represented that "this '***freedom of choice***' is an important distinction between [his] invention and the prior art." (*Id.*)

Dietz continued that the examiner "correctly notes that if the player does not

20

replace any of the initially drawn symbols, [Dietz's] game will behave much like a regular slot machine." (*Id.*) Dietz argued, however, that "the important difference is that, in [his] game, the player has been given a ***choice*** he or she would not have in a regular slot machine game." (*Id.*) Dietz argued that in all of his "***claims***" (which includes application claim 33 that issued as claim 32) "the ***player*** in [Dietz's] game has been ***allowed*** to designate a chosen number, from none to all, of said initially displayed symbols for replacement." (Appx1059 (first and second emphases added).) Dietz again argued that the "freedom of choice" allowed by his slot machine "is simply not present in any of the prior art slot machine games." (*Id.*)

Dietz made these arguments and representations with respect to all of his claims, including application claim 33 that issued as claim 32. (*Id.*) And Dietz stated that, "in the interest of expediting prosecution," he would nonetheless incorporate the examiner's recommended "one to all" limitation into application claim 33 (issued claim 32). (*Id.*)

**3.    The Patent Office allowed the claim at issue in this case because the inventor agreed to limit the claim to requiring a player to designate at least one initial displayed symbol for replacement**

The examiner allowed application claim 33 (issued claim 32) based on Dietz's agreement to change "from none to all" to "from one to all" in the "designating" step. (Appx. 1074.) In other words, the examiner allowed application claim 33 (issued claim 32) because Dietz agreed to limit the claim to a player designating at

least one initial displayed symbol for replacement, even though Dietz believed the full scope of his alleged invention also included giving a player the choice to designate "none" of the initial displayed symbols for replacement. (*Id*.)

### 4. The inventor continued to prosecute other claims to obtain the broader scope of allowing a player to choose to designate "none" of the initial displayed symbols for replacement

Dietz continued to prosecute and amend the remaining claims in his application in an attempt to capture the "from none to all" language that Dietz argued was the full scope of his alleged invention. (Appx1080-1103.) Dietz amended the remaining claims to include "touch screen," which Dietz argued the Dabrowski and Manship failed to disclose. (*Id*.)

Dietz also amended his remaining claims to include the word "player" in the "designating" step. (Appx1061-1065.) The examiner did not require Dietz to add the word "player" to those claims, and Dietz never explained why he added the word "player" to the claims. (Appx1043-1065 and Appx1080-1103.) Indeed, as noted above, from the very outset of the prosecution the examiner never questioned or disputed Dietz's repeated and consistent representations that it is the player that designates initial displayed symbols for replacement.

The examiner ultimately allowed the remaining claims with the "from none to all" claim language that Dietz argued was the full scope of his alleged invention. (Appx1104-1110.) The examiner allowed the remaining claims because Dietz added

"touch screen" limitations, not because Dietz added the word "player." (Appx1109.)

## C.    The '477 Patent's *Ex Parte* Reexamination

### 1.    The examiner rejected claims 1, 32, and 34

Shortly after Rembrandt filed suit, one of the Defendants-Appellees, WMS Gaming Inc. ("WMS"), petitioned the Patent Office to conduct an *ex parte* reexamination of claims 1, 32, and 34 of the '477 patent. (Appx141-248.) Because Rembrandt asserted its claims against Defendants-Appellees' slot machine "games of chance" that do not permit a player to designate initial displayed symbols for replacement, WMS based its petition on a number of prior art references, including references that teach a player designating initial displayed symbols for replacement and references that do not. (*Id*.) WMS noted in its petition that the literal language of claim 32 does not include the word "player" like some of the other claims in the '477 patent. (*Id*.) But, nowhere in the petition did WMS admit or concede that claims 1, 32, and 34 are directed to machine designation, as opposed to player designation. (*Id*.) Moreover, after filing its petition, WMS had no opportunity to participate in the reexamination because it was conducted *ex parte*.

The Patent Office initiated a reexamination. (Appx1485-1503.) The reexamination examiner issued a final office action rejecting claims 1, 32, and 34 as anticipated and/or rendered obvious by three prior art references, including two references that teach a player designating initial displayed symbols for replacement

and one reference that does not.  (Appx581-619.)  More specifically, the examiner rejected claims 32 and 34 as anticipated by GB 2097160A to Wain ("Wain"), which teaches a player designating symbols for replacement.  (Appx587-589; *see also* Appx176; Appx1127.)  The examiner also rejected claims 32 and 34 as anticipated by the Tequila Sunrise advertisement ("Tequila Sunrise"), which does not teach a player designating symbols for replacement.  (Appx590; *see also* Appx179-180; Appx1127.)  The examiner also rejected claims 1 and 32 as obvious over Wain and GB 2251112A to Marchini ("Marchini"), which teaches a player designating symbols for replacement.  (Appx590; *see also* Appx162-164; Appx1127.)  Finally, the examiner also rejected claim 32 as obvious over Wain and Tequila Sunrise. (Appx591; *see also* Appx1127.)

### 2. The PTAB affirmed the rejection of claims 1 and 34, but reversed the rejection of claim 32

Rembrandt appealed to the PTAB.  (Appx621.)  Rembrandt and the examiner addressed two primary claim construction disputes in their appeal briefs.  (Appx527-567.)  Neither of the disputes related to whether a player or the slot machine designates initial displayed symbols for replacement, and neither Rembrandt nor the examiner analyzed that particular question in their appeal briefs.  (*Id.*)

The first primary claim construction dispute was whether claim 32 is limited to designating "individual" or "single" initial displayed symbols for replacement (as Rembrandt contended) or whether it also encompasses designating entire rows

and/or columns of initial displayed symbols for replacement (as the examiner contended). (Appx548-555.) On this dispute, the examiner agreed with Rembrandt that the specification "distinguishes between symbol designation and column or row designation," but continued that "the issue here is not what the patent specification discloses, but what is actually claimed." (Appx548.) The examiner concluded that claim 32 is not limited to designating only "individual" or "single" initial displayed symbols for replacement, but also encompasses designating rows and/or columns of initial displayed symbols for replacement. (Appx548-549.) In doing so, the examiner correctly noted that during prosecution for claim 32, Dietz rejected the examiner's recommendation on how to amend the claim to capture "individual" or "single" initial displayed symbol replacement. (Appx550-552.) The examiner also correctly noted that Dietz captured the "individual" or "single" initial displayed symbol replacement feature in claim 1 by adding the "touch screen" and "from none to all" limitations to that claim. (*Id.*)

The second primary claim construction dispute was whether claim 32 requires separate "first" and "second" simulated spinning motions. (Appx563-565.) Rembrandt argued the claim requires two separate simulated spinning motions. (*Id.*) Rembrandt did so because some of the prior art at issue in the reexamination did not teach two separate simulated spinning motions. (*Id.*) The examiner disagreed and argued that claim 32 did not require separate "first" and "second" simulated spinning

motions.  (*Id*.)

The PTAB affirmed the rejection of claims 1 and 34, but reversed the rejection of claim 32.  (Appx 1125.)  The PTAB began its decision by stating that Dietz invented an "electronic slot machine ... which allows a ***player*** to completely replace up to all of the initial symbols displayed after the first draw in order to create, improve or even lose a winning combination."  (Appx1126 (emphasis added).)   The PTAB then proceeded to address two issues with respect to claim 32: (1) whether the examiner erred "in relying on Tequila Sunrise as prior art," and (2) whether the examiner erred "in concluding claim 32 only requires a single display of a simulated spinning motion."  (Appx1128.)

The PTAB answered both questions in the affirmative.  (Appx1128; Appx1131.)  That is, the PTAB held that the examiner erred in relying on Tequila Sunrise as prior art, which again is the only reference the examiner relied on that did not teach a player designating initial displayed symbols for replacement.  (Appx1128.)  The PTAB found that the examiner presented "insufficient evidence showing that Tequila Sunrise represented a printed publication under 35 U.S.C. § 102(b)."  (*Id*.)   Regarding the second question, the PTAB held that the examiner erred in concluding that claim 32 only requires a single display of a simulated spinning motion.  (Appx1131.)  The PTAB also found the examiner's "findings do not show … Wain discloses a second simulated spinning motion."  (Appx1132.)

26

Because the examiner's rejections of claim 32 were based on Tequila Sunrise and/or Wain, the PTAB reversed all the rejections of claim 32.  (Appx1136.)

### D.    The District Court Proceedings

After the reexamination, the lawsuit continued at the District Court with Rembrandt asserting claim 32.  (Appx1-9.)  The parties disputed the construction of two claim limitations: "initial symbols" and the "designating" step.  (Appx4.)

### 1.    The District Court correctly construed "initial symbols" and Rembrandt does not dispute that on appeal

Claim 32 makes reference to both "initial symbols" and "replacement symbols."  (Appx23; Appx4.)  The "initial symbols" and "replacement symbols" are separate and distinct in the context of claim 32.  (Appx4.)  Rembrandt, however, asked the District Court to construe "initial symbols" in a way that would have rendered the "initial" limitation superfluous and there would have been no difference between "initial symbols" and "replacement symbols."  (Appx4-5.)  The District Court rejected Rembrandt's attempt to read that limitation out of claim 32, and construed "initial symbols" to mean "symbols resulting from the machine's first draw/spin."  (Appx4-5.)  Rembrandt does not dispute the District Court's construction of "initial symbols" on appeal.  (ECF No. 16.)

### 2. The District Court correctly held the "designating" step does not have an "individual" or "single" symbol replacement limitation and Rembrandt does not dispute that on appeal

Rembrandt argued before the District Court that the "designating" step includes an "individual" or "single" symbol replacement limitation (Appx6) – *i.e.*, the same argument Dietz made during the original prosecution and the examiner rejected, and the same argument Rembrandt made during the *ex parte* reexamination and the examiner again rejected. (Appx548-555.)

During the claim construction hearing, the District Court pressed Rembrandt on this issue and Rembrandt ultimately agreed to drop its attempt to read an "individual" or "single" symbol limitation into claim 32. (Appx1339-1341.) The District Court rejected Rembrandt's construction in its Order, and Rembrandt does not dispute that portion of the Order on appeal. (ECF No. 16.)

Despite conceding during the claim construction hearing that its construction was incorrect, and despite not disputing the District Court's rejection of that portion of the construction on appeal, Rembrandt nonetheless disingenuously suggests in its appeal brief that the Patent Office allowed claim 32 because of an "individual" or "single" symbol replacement feature. (ECF No. 16 at 54.) Defendants-Appellees address that falsehood in Argument Section I.C at pages 56-60.

### 3. The District Court correctly held the "designating" step requires a player, not the slot machine, to designate at least one initial displayed symbol for replacement

The "main point of contention" between the parties with respect to the "designating" step was who or what designates initial displayed symbols for replacement. (Appx6.) The District Court analyzed the intrinsic evidence and determined that a player, not the slot machine itself, must designate initial displayed symbols for replacement. (Appx1-9).

### 4. The District Court correctly entered final judgment of non-infringement

The District Court's correct construction of the "designating" step is case dispositive because it is undisputed that a player of Defendants-Appellees' accused slot machines cannot designate any symbols for replacement, let alone initial displayed symbols.[2] (Appx326; Appx1816-1819.) Consequently, after the District Court entered its claim construction order, Rembrandt stipulated to final judgment of non-infringement and filed this appeal challenging the District Court's construction of the "designating" step. (Appx1816-1819; Appx10-11.)

---

[2] Rembrandt erroneously claims it is undisputed that each accused slot machine is programmed to carry out all other steps of the method. (ECF No. 16 at 11.) To the contrary, many other steps of the method are disputed by the parties. But other limitations are not at issue on this appeal because the stipulated judgment is based on the undisputed fact that none of the accused slot machines allow a player to designate any symbols for replacement.

5.    **Defendants-Appellees' motion to declare this case exceptional for an award of attorneys' fees and costs is pending at the District Court**

Defendants-Appellees also filed a motion with the District Court to deem this case exceptional for an award of attorneys' fees and costs. *Rembrandt Gaming*, No. 2:12-cv-775 (D. Nev.), ECF No. 203. The bases for the motion include: (i) Rembrandt violated rules of ethical conduct; (ii) Rembrandt enforced the '477 patent knowing it is invalid and unenforceable; and (iii) Rembrandt took unreasonable positions during the claim construction phase of this case. *Id.* Significantly, a Rembrandt affiliated company engaged in similar "exceptional" conduct in another recent case. *In re Rembrandt Technologies*, 1:07-md-1848 (D. Del.), ECF No. 951. Defendants-Appellees motion is pending before the District Court.

## SUMMARY OF THE ARGUMENT

The District Court correctly construed the "designating" step in claim 32 of the '477 patent to require that a player, not the slot machine itself, designates initial displayed symbols for replacement. The District Court's construction is correct for at least three independent reasons.

First, the ordinary meaning of the "designating" step, when read in the context of the intrinsic evidence, is limited to a player designating initial displayed symbols for replacement. The specification repeatedly and consistently describes the alleged invention as requiring a ***player*** to designate initial displayed symbols for

replacement.  Every embodiment in the specification requires a player to designate initial displayed symbols for replacement.  The specification does not provide any embodiments or other disclosure where a slot machine designates initial displayed symbols for replacement, nor does it disclose how a slot machine would decide which initial displayed symbols to designate for replacement.  Similarly, during prosecution, the inventor repeatedly and consistently emphasized that his alleged invention requires a ***player*** to designate initial displayed symbols for replacement.

Second, the specification also contains a clear and unmistakable disclaimer requiring a player to designate initial displayed symbols for replacement.  The specification describes the "present invention" as a whole several times.  Each time, the specification describes the "***present invention***" as requiring a ***player*** to designate initial displayed symbols for replacement.

Third, the prosecution history also contains a clear and unmistakable disclaimer requiring a player to designate initial displayed symbols for replacement.  During prosecution, the inventor stated that his alleged invention is for a game of "***skill***" and that an "***important difference***" between all of his "***claims***," including claim 32 at issue in this case, and the prior art is that his claims give the player "***freedom of choice***" to designate initial displayed symbols for replacement.

Rembrandt conceded that it cannot, as a matter of law, prove that Defendants-Appellees' accused slot machines infringe claim 32 in view of the District Court's

construction because it is undisputed that a player of Defendants-Appellees' accused slot machines cannot designate any symbols for replacement, let alone initial displayed symbols. Consequently, because the District Court correctly construed the "designating" step to require that a player designate initial displayed symbols for replacement, the District Court also correctly entered final judgment of non-infringement. The District Court should be affirmed in its entirety.

## ARGUMENT

**I. THE DISTRICT COURT CORRECTLY CONSTRUED THE "DESIGNATING" STEP IN CLAIM 32 TO REQUIRE THAT A PLAYER, NOT THE SLOT MACHINE, DESIGNATES INITIAL DISPLAYED SYMBOLS FOR REPLACEMENT**

### A. The Ordinary Meaning of the "Designating" Step, when Read in the Context of the Intrinsic Evidence, is Limited to a Player Designating Initial Displayed Symbols for Replacement

The words of a claim are generally given their ordinary and customary meaning, which is the meaning the term would have to a person of ordinary skill in the art at the time of the invention. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005). The "only meaning that matters," however, "is the meaning in the context of the patent." *Trustees of Columbia Univ. v. Symantec Corp.*, 811 F.3d 1359, 1363 (Fed. Cir. 2016); *see also Pacing Techs., LLC v. Garmin Int'l, Inc.*, 778 F.3d 1021, 1024 (Fed. Cir. 2015) ("claim terms are construed in light of the specification and prosecution history, not in isolation").

To that end, "the person of ordinary skill in the art is deemed to read the claim

term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Phillips*, 415 F.3d at 1313.   Indeed, the specification "'is always highly relevant to the claim construction analysis.   Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Id*. at 1315 (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)).

This Court's opinion in *UltimatePointer, L.L.C. v. Nintendo Co.* is instructive. 816 F.3d 816 (Fed. Cir. 2016).   The patent at issue described a "handheld pointing device that can be used to control the cursor on a projected computer screen." *Id.* at 818.   The parties disputed whether the term "handheld device" should be limited to a direct-pointing device, or whether it also included indirect-pointing devices. *Id*. at 821.   The district court construed "handheld device" to mean a "handheld direct pointing device," and this Court affirmed because the "specification repeatedly emphasizes that the invention is directed to a direct-pointing system." *Id*. at 823. This Court studied the entire specification and determined that, "[t]aken together, the repeated description of the invention as a direct-pointing system, the repeated extolling of the virtues of direct pointing, and the repeated criticism of indirect pointing clearly point to the conclusion that the 'handheld device' . . . is limited to a direct-pointing device." *Id*. at 823.

Likewise, here, the specification of the '477 patent repeatedly and consistently

emphasizes that the invention is an electronic slot machine where a player designates initial displayed symbols for replacement.  (*See* Statement of the Facts Section II.A on pages 4-12.)  First, the specification criticizes prior art "games of chance" because "the player has no opportunity for adjusting the displayed combination, short of completely starting a new game," to result in a winning combination.  (Appx18 at 2:5-10.)  The specification also criticizes prior art "nudging" features for not providing enough "skill" and not giving the player enough involvement in the outcome of the game.  (Appx18 at 2:18-30.)  The specification explains that the patent solves that problem by providing an electronic slot machine that "allows ***players to select for respin*** one or more of the symbols displayed after the machine's first spin."  (Appx18 at 1:9-15 (emphasis added).)

Second, the specification repeatedly and consistently describes the alleged invention as requiring a player to designate initial displayed symbols for replacement.  (Appx18-22; *see also* Statement of the Facts Section II.A.)  Every embodiment in the specification requires a player to designate initial displayed symbols for replacement.  (*Id*.)  The specification does not provide any embodiments or any other disclosure where a slot machine designates initial displayed symbols for replacement, and the specification does not disclose how a slot machine would decide which initial displayed symbols to designate for replacement.  (*Id*.)

Third, the disclosure in the specification is buttressed by the prosecution

history.  Dietz repeatedly and consistently emphasized during prosecution that his alleged invention is for a game of "skill" and that an "important difference" between all of his claims (including claim 32) and the prior art is the player's "freedom of choice" to designate initial displayed symbols for replacement.  (Appx950; Appx1059; *see also* Statement of the Facts Section II.B on pages 12-23.)

Thus, the intrinsic evidence repeatedly and consistently characterizes the alleged invention as a slot machine where a player, not the slot machine, designates initial displayed symbols for replacement.  Just as in *UltimatePointer*, the intrinsic evidence, when taken as a whole, compels the District Court's construction.  *UltimatePointer,* 816 F.3d at 823-824; *see also GPNE Corp. v. Apple Inc.*, 830 F.3d 1365, 1370 (Fed. Cir. 2016) (affirming district court's construction of "node" as a "pager" because the specification "repeatedly and consistently" characterized the "node" as a "pager").

Rembrandt's arguments do not require a different result.  Rembrandt argues that the term "designating" has an ordinary meaning not limited to player designation and that plain meaning should control absent a clear definition or disclaimer from the inventor.  (ECF No. 16 at 30-37.)  Adopting Rembrandt's "ordinary meaning," however, would "incorrectly require [this Court] to divorce the claim language" from the repeated and consistent descriptions of the alleged invention in the intrinsic evidence.  *UltimatePointer*, 816 F.3d at 823-24; *see also Decisioning.com, Inc. v.*

35

*Federated Dep't Stores, Inc.*, 527 F.3d 1300, 1308 (Fed. Cir. 2008) (per curiam) (rejecting proposed broad construction because it was not supported by the specification, even though it was plausible if "[d]ivorced from the specification"). Likewise, Rembrandt's arguments that a court may only deviate from the ordinary meaning when there is an explicit definition or disclaimer (ECF No. 16 at 36-37) do not apply in this case because the ordinary meaning of the "designating" step, when read in the context of the intrinsic evidence, is limited to an electronic slot machine where a player, not the slot machine, designates initial displayed symbols for replacement. *UltimatePointer*, 816 F.3d at 824.

Rembrandt also incorrectly argues that the specification of the '477 patent provides "multiple solutions" to the problem of prior art slot machine "games of chance." (ECF No. 16 at 14-16.) All of the examples Rembrandt relies on, however, require a player, not the slot machine, to designate initial displayed symbols for replacement. (*Id.*) Rembrandt does not cite a single example – and there are none – where the slot machine designates initial displayed symbols for replacement without player involvement. (*Id.*) (*See* Statement of the Case Section II.A.5 at pages 10-12.)

Rembrandt also disingenuously argues that the specification "explicitly contemplates and acknowledges" that the machine itself can be programmed to designate "symbols for replacement." (ECF No. 16 at 47-50.) But the "designating"

36

step of claim 32 is not directed to just any symbols, but rather is directed to "*initial displayed* symbols." That distinction is important because Rembrandt does not, and cannot, argue that the specification discloses that the slot machine can be programmed to designate *initial displayed* symbols for replacement without player involvement. (*Id.*) Rather, Rembrandt references a portion of the specification that provides nothing more than that the slot machine may automatically respin a *replacement symbol* if that replacement symbol is the same as the *initial displayed* symbol that the *player* designated for replacement. (Appx18-19 at 2:65-3:6.) The specification states "if a symbol after the first respin turns out to be the same as the original symbol [*i.e.*, the replacement symbol is the same as the initial displayed symbol the player designated for replacement], that symbol can be respun again, either automatically or at a player's option, in order to try to obtain a different symbol." (*Id.*)

The specification describes this embodiment in more detail at column 8, line 64, through column 9, line 8. (Appx21-22 at 8:64-9:8.) Rembrandt also cites to a portion of this excerpt. (ECF No. 16 at 15, 48.) But even in this embodiment, the player, not the machine, designates an initial displayed symbol for replacement. (*Id.*; Appx21-22 at 8:64-9:8.) If the replacement symbol turns out to be the same as the initial symbol, the slot machine continues to respin the replacement symbol until a symbol is displayed that is different than initial symbol the player designated for

replacement.  (Appx21-22 at 8:64-9:8.)

Rembrandt also points to one of the examples in the "catch all" provision at the end of the specification, but even Rembrandt's own description of that example confirms that the player, not the slot machine, designates initial displayed symbols for replacement.  (ECF No. 16 at 48; Appx22 at 9:18-40.)  Rembrandt describes the embodiment as "the ***player*** chooses one box for respin" and then the slot machine respins that box and "all other boxes which have the same full symbol as the one box ***chosen by the player***."  (ECF No. 16 at 48 (emphasis added).)  This is not an example of the slot machine designating initial displayed symbols for replacement without player involvement.  (*Id.*; Appx22 at 9:18-40.)

Rembrandt's claim differentiation arguments similarly fail.  (ECF No. 16 at 16-18 and 33-35.)  "In the most specific sense, 'claim differentiation' refers to the presumption that an independent claim should not be construed as requiring a limitation added by a dependent claim."  *Curtiss-Wright Flow Control Corp. v. Velan, Inc.*, 438 F.3d 1374, 1380-81 (Fed. Cir. 2006).  That presumption has no application here because independent claim 32 does not have any dependent claims.  (Appx22-24.)

"Beyond the independent/dependent claim scenario," this Court has characterized claim differentiation as the "presumption that each claim in a patent has a different scope."  *Id.*  In this context, this Court has cautioned that claim

differentiation is "not a hard and fast rule," but rather "a presumption that will be overcome when the specification or prosecution history dictates a contrary construction." *GPNE*, 830 F.3d at 1371. Two considerations govern claim differentiation when applied to independent claims: (1) claim differentiation takes on relevance only when the construction of one independent claim renders another independent claim superfluous; and (2) claim differentiation cannot be used to broaden claims beyond their correct scope. *Curtiss-Wright*, 438 F.3d 1374 at 1381. Rembrandt's claim differentiation arguments fail under both of those considerations.

First, the District Court's proper construction of the "designating" step does not render any other claim superfluous because there are numerous differences between claim 32 and the other claims. Claim 30 is the closest claim to claim 32 in content. (Appx22-24.) As Dietz explained during prosecution, however, he added separate and distinct limitations to claims 30 and 32 to attempt to distinguish his alleged invention over the prior art. (Appx1016.) For claim 30 (application claim 31), Dietz added that "a winning combination is determined by assessing whether particular symbols are aligned horizontally, vertically, diagonally or in another geometric pattern which matches a predetermined winning combination." (*Id.*) For claim 32 (application claim 33), Dietz added that a "simulated spinning motion is made before symbols are displayed." (*Id.*) Thus, construing the "designating" step to require a player to designate initial displayed symbols for replacement does not

render either claim, or any other claim, superfluous. *GPNE*, 830 F.3d at 1371 (rejecting claim differentiation argument because, *inter alia*, the "claims that GPNE contrasts differ in more ways than just their use of 'node' or 'pager'").

Second, and more importantly, any claim differentiation presumption is overcome by the intrinsic evidence, which repeatedly and consistently characterizes the alleged invention as a slot machine where a player, not the slot machine, designates initial displayed symbols for replacement. *See GPNE*, 830 F.3d at 1371 (rejecting claim differentiation argument because, *inter alia*, "the specification and the prosecution history so consistently describe 'nodes' as 'pagers'"). Moreover, as discussed below, the specification and the prosecution history of the '477 patent also contain clear and unmistakable disclaimers of claim scope, which trump any and all claim differentiation arguments. *Retractable Techs., Inc. v. Becton, Dickinson & Co.*, 653 F.3d 1296, 1305 (Fed. Cir. 2011) ("any presumption created by the doctrine of claim differentiation 'will be overcome by a contrary construction dictated by the written description or prosecution history'").

Rembrandt also incorrectly argues the District Court's construction improperly relied on ambiguous statements about the invention and preferred embodiments. (ECF No. 16 at 40-44.) The requirement that a player designate initial displayed symbols for replacement, however, is not taken from one of the embodiments of the invention; it is taken from Dietz's consistent and repeated

description of the alleged invention as a whole throughout the specification and the prosecution history.  (*See* Statement of the Facts Section II.A and II.B on pages 4-23.)

Moreover, Rembrandt attempts to manufacture ambiguity in Dietz's representations regarding the alleged invention where none exists.  (ECF No. 16 at 40-44.)  For example, Rembrandt incorrectly argues the description of the alleged invention in the "Summary of the Invention" section of the specification "does not mention who or what performs the designating of symbols for replacement."  (*Id*.)  But the Summary unambiguously states the "present invention provides an electronic slot machine *which allows a player to completely respin* one or more of the symbols displayed after the first spin in order to create, improve, or even lose a winning combination."  (Appx18 at 2:34-37 (emphasis added).)

For all the above reasons, the ordinary meaning of the "designating" step, when read in the context of the intrinsic evidence, is limited to a player designating initial displayed symbols for replacement.  The District Court should be affirmed for this reason.

**B.     The Specification also Contains a Clear and Unmistakable Disclaimer Requiring a Player to Designate Initial Displayed Symbols for Replacement**

The District Court's construction of the "designating" step is correct for the additional reason that the specification contains a clear and unmistakable disclaimer requiring a player to designate initial displayed symbols for replacement.

A "patent is a fully integrated written instrument" and, accordingly, this Court has "long emphasized the importance of the specification in claim construction." *David Netzer Consulting Eng'r LLC v. Shell Oil Co.*, 824 F.3d 989, 993-94 (Fed. Cir. 2016), *cert. denied*, No. 16-713, 2017 WL 69299 (2017).  If the "specification reveals an intentional disclaimer or disavowal of claim scope by the inventor, then the inventor's intention as expressed in the specification is regarded as dispositive." *Id*. at 994.

This Court has found a disclaimer or disavowal when an inventor describes the features of the "present invention" as a whole in the context of the patent, such as by stating "the present invention includes . . ." or "the present invention is . . ." or "all embodiments of the present invention are . . . ."  *Id.* (citing *Pacing Techs.*, 778 F.3d at 1024).  If an inventor chooses to make that type of "present invention" statement in the specification, the scope of the alleged invention is limited to what the inventor describes as the "present invention."  *Id.*; *see also Regents of Univ. of Minn. v. AGA Med. Corp.*, 717 F.3d 929, 936 (Fed. Cir. 2013) (considering "present

invention" language in assessing claim scope ); *Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1308 (Fed. Cir. 2007) (same); *Honeywell Int'l, Inc. v. ITT Indus., Inc.*, 452 F.3d 1312, 1318-19 (Fed. Cir. 2006) (same); *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1343-44 (Fed. Cir. 2001) (same).

One of the rationales for this legal principle is that the intrinsic evidence constitutes the public record of the applicant's claim, a record on which the public is entitled to rely. *Vitronics*, 90 F.3d at 1582-83. If the inventor chooses to describe the "present invention" as a whole in the context of the patent, the public notice function of a patent requires that the applicant be held to what is described as the "present invention." *See id.*; *Honeywell*, 452 F.3d at 1318 (noting that, based on the patentee's use of the "present invention" language, "[t]he public is entitled to take the patentee at his word and the word was that the invention is a fuel filter"). To hold otherwise would undercut the public's reliance on a statement in the public record and upon which reasonable competitors may form business strategies. *Vitronics*, 90 F.3d at 1583.

Here, the '477 patent describes the "present invention" as a whole several times. (Appx18 at 1:9-15 and 2:34-37, and Appx21 at 8:36-46.) Each time, the specification describes the "present invention" as requiring a ***player*** to designate initial displayed symbols for replacement, as shown in the example reproduced

below.  (Appx18 at 1:9-15.)   These descriptions of the "present invention" are

consistent with and supported by the remainder of the intrinsic evidence, as further

discussed in Argument Sections I.A and C.

> ### TECHNICAL FIELD OF THE INVENTION
>
>     The present invention relates to a type of gaming machine
> which is commonly referred to as a slot machine. More    10
> particularly, the present invention relates to an electronic slot
> machine which allows players to select for respin one or
> more of the symbols displayed after the machine's first spin.
> This feature allows the player to get a second chance at
> creating, improving or even losing a winning combination.    15
>
> **The '477 patent (Appx18 at 1:9-15)**

Rembrandt incorrectly argues that "nearly every" description of the "present

invention" occurs "within a description of a preferred embodiment."  (ECF No. 16

at 45.)  To the contrary, Dietz provided his descriptions of the "present invention"

in the "Abstract," the "Technical Field of the Invention," and the "Summary of the

Invention" sections of the specification and they describe the "present invention" as

a whole.  (Appx18 at 1:9-15 and 2:34-37, and Appx21 at 8:36-46.)

Rembrandt also incorrectly argues the "present invention" descriptions that

"do not occur in the context of a preferred embodiment do not specify who or what

performs the designation of symbols for replacement."   (ECF No. 16 at 45.)

Rembrandt ignores the "present invention" description in the "Technical Field of the

Invention" section, reproduced above, which describes the alleged invention as a

whole and expressly specifies that the *player* performs the designation of initial displayed symbols.  (Appx18 at 1:9-15.)  Tellingly, Rembrandt does not address or even acknowledge that particular "present invention" description anywhere in its opening brief.  (ECF No. 16.)

Finally, Rembrandt's reliance on *Absolute Software, Inc. v. Stealth Signal, Inc.* is misplaced.  (ECF No. 16 at 44-45.)  In *Absolute Software*, this Court refused to find a specification disclaimer based on "present invention" language that merely referred to "optional" features, and moreover the various "present invention" descriptions in the specification contradicted each other.  659 F.3d 1121, 1136-37 (Fed. Cir. 2011).  But that is not the case here.  The "present invention" descriptions in the '477 patent do not describe "optional" features and they do not contradict each other.  Like *David Netzer Consulting, Pacing Techs.*, *AGA Med. Corp.*, *Verizon Services*, *Honeywell*, and *SciMed*, cases where this Court found a specification disclaimer based on descriptions of the "present invention" as a whole, the "present invention" descriptions in the '477 patent repeatedly and consistently describe the alleged invention as requiring a player to designate initial displayed symbols for replacement.  (Appx18 at 1:9-15 and 2:34-37, and Appx21 at 8:36-46.)

For all the above reasons, the specification of the '477 patent contains a clear and unmistakable disclaimer requiring a player to designate initial displayed symbols for replacement.  The District Court should be affirmed for this additional

reason.

### C. The Prosecution History also Contains a Clear and Unmistakable Disclaimer Requiring a Player to Designate Initial Displayed Symbols for Replacement

The District Court's construction of the "designating" step is correct for the additional reason that the prosecution history contains a clear and unmistakable disclaimer requiring a player to designate initial displayed symbols for replacement.

The prosecution history of a patent "can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Phillips*, 415 F.3d at 1317. A clear and unmistakable disclaimer during prosecution overcomes the presumption that claim terms carry their ordinary and customary meaning. *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323, 1325-26 (Fed. Cir. 2003). Thus, when an inventor unequivocally and unambiguously disavows a certain meaning to obtain a patent, the doctrine of prosecution history disclaimer narrows the meaning of the claim consistent with the scope of the claim surrendered. *Id*. at 1324.

Such statements can take the form of either amendment or argument. *Biogen Idec, Inc. v. GlaxoSmithKline LLC*, 713 F.3d 1090, 1095 (Fed. Cir. 2013) (citing *Elkay Mfg. Co. v. Ebco Mfg. Co.*, 192 F.3d 973, 979 (Fed. Cir. 1999); *Computer Docking Station Corp. v. Dell, Inc.*, 519 F.3d 1366, 1374 (Fed. Cir. 2008)). For

46

example, an inventor may disclaim scope during prosecution by characterizing the invention in a way to try to overcome rejections based on prior art. *See, e.g., Computer Docking*, 519 F.3d at 1376–79 ("portable computer" limitation in preamble of claim determined to mean "a computer without a built-in display or keyboard" due to prosecution statements distinguishing prior art as "requiring a portable display and keyboard," whereas the invention did not require a built-in display and keyboard); *Microsoft Corp. v. Multi–Tech Sys., Inc.*, 357 F.3d 1340, 1349 (Fed. Cir. 2004) (limiting the term "transmitting" to require direct transmission over telephone line because the inventor stated during prosecution that the invention transmits over a standard telephone line, thus disclaiming transmission over a packet-switched network); *Alloc v. Int'l Trade Comm'n*, 342 F.3d 1361, 1372 (Fed. Cir. 2003) (finding the inventor expressly disclaimed floor paneling systems without "play" because the inventor cited the feature during prosecution to overcome prior art); *Bell Atl. Network Servs. v. Covad Commc'ns Group, Inc.*, 262 F.3d 1258, 1273-74 (Fed. Cir. 2001) (limiting operation of the "transceiver" to the three stated modes because of clearly limiting statements made by the inventor to try to overcome a prior art rejection).

This doctrine of prosecution history disclaimer "plays an important role in the patent system." *Biogen*, 713 F.3d at 1095. It "protects the public's reliance on definitive statements made during prosecution," *Omega*, 334 F.3d at 1324, by

"precluding patentees from recapturing through claim interpretation specific meanings disclaimed during prosecution," *id.* at 1323 (citing *Schriber–Schroth Co. v. Cleveland Trust Co.*, 311 U.S. 211, 220–21 (1940)).  In particular, competitors are entitled to rely on the inventor's representations during prosecution "when determining a course of lawful conduct, such as launching a new product or designing-around a patented invention."  *Biogen*, 713 F.3d at 1095.  To that end, claims should not be construed "one way in order to obtain their allowance and in a different way against accused infringers."  *Chimie v. PPG Indus.*, 402 F.3d 1371, 1384 (Fed. Cir. 2005).

Here, from the outset and throughout the prosecution, Dietz repeatedly and consistently argued that his alleged invention is directed to a game of skill where the *player* designates initial displayed symbols for replacement.  (*See* Statement of Facts Section II.B at pages 13-23.)  In response to the first office action, Dietz argued his alleged invention is different from Manship because Manship does not allow a *player* to select initial displayed symbols for replacement (Appx950.)  Dietz continued that the slot machine in Manship "is entirely a game of chance," in contrast to his alleged invention which "involves an important element of skill (*i.e.*, choosing which slot machine symbols to replace)."  (*Id.*)

Importantly, Dietz made these arguments and representations even when the "designating" step of his method claims did not include the word "player."

(Appx761-763.)   In other words, Dietz represented to the Patent Office and the public throughout prosecution that his alleged invention is a not a game of "chance," but rather a game of "skill" that requires a player to designate initial displayed symbols for replacement.  (*See* Statement of Facts Section II.B at pages 13-23.)

Rembrandt incorrectly argues that Dietz's arguments and representations during prosecution "were all in reference to claims other than claim 32."  (ECF No. 16 at 52-53.)  Rembrandt's argument is legally and factually wrong.  It is legally wrong because the "entirety of a patent's file history captures the public record of the patentee's representations concerning the scope and meaning of the claims." *Biogen*, 713 F.3d at 1095.  Thus, it "is the totality of the prosecution history that must be assessed, not the individual segments of the presentation made to the [PTO] by the applicant."  *Elkay*, 192 F.3d at 979.  Applying those principles here, an assessment of the totality of the prosecution history of the '477 patent confirms that Dietz repeatedly and consistently argued and represented that his alleged invention, not just particular claims, is directed to a game of skill where the player designates initial displayed symbols for replacement.

Rembrandt's argument is factually wrong because it ignores the clear and unmistakable disclaimers Dietz made during the examiner interview on June 19, 2002, and again in his July 2, 2002, response and amendment (Appx1040-1041 and Appx1043-1065.)  More specifically, Dietz added claim 32 (application claim 33)

to his application on October 10, 2001.  (Appx1001-1023.)  Application claim 33
contained the same "designating" step language as Dietz's original method claims,
which Dietz had already argued require a player to designate initial displayed
symbols for replacement even though they did not include the word "player."
(Appx1016.)  Dietz represented that he added application claim 33 to recite an
additional alleged difference between his invention and the prior art, namely, a
"simulated spinning motion" to distinguish over the video poker prior art of
Dabrowski.  (Appx1016.)

Dietz did ***not*** argue that application claim 33 was directed to a "game of
chance" (which would have been inconsistent with his earlier representations that
his alleged invention is directed to a "game of skill" that requires a player to
designate initial displayed symbols for replacement).  (*Id.*)  Dietz did ***not*** argue that,
unlike all of his other claims, application claim 33 is directed to a slot machine
designating initial displayed symbols for replacement.  (*Id.*)  Dietz also did ***not*** argue
he was removing from application claim 33 the requirement that a player designate
initial displayed symbols for replacement.  (*Id.*)

The examiner thereafter rejected all of Dietz's claims, including application
claim 33, because the "designating" step in all of the claims included a "from none
to all" limitation.  (Appx1025-1033.)  The examiner explained that the "from none
to all" limitation meant that a player could choose to designate "none" of the initial

displayed symbols for replacement, which would not be any different than every prior art slot machine "game of chance" where the player has no ability to designate initial displayed symbols for replacement. (Appx1031.)

With respect to application claim 33, the examiner also explained that the "simulated spinning motion" limitation was taught by Dabrowski in view of Manship, and was an "indigenous, well-known feature of slot machines." (Appx1028.) The examiner then recommended amending application claim 33 from "none to all" to "at least one to all" to distinguish over Dabrowski and Manship. (Appx1031-1032.)

Dietz conducted an examiner interview on June 19, 2002. (Appx1040-1041.) During the interview, Dietz argued that *all* of his independent claims (which includes application claim 33 that issued as claim 32) are different from the prior art because the prior art slot machines do not allow for the *player* to "choose to replace" from "none to all" of the initial displayed symbols. (Appx1041.) The relevant portion of the interview summary is reproduced below.

Agreement ☐ was reached. ☐ was not reached. ☐ N/A

Claim(s) discussed: *Independent claim features; claim 20*

Identification of prior art discussed: _____

Description of the general nature of what was agreed to if an agreement was reached, or any other comments: *Applicant argued that prior art slot machines do not allow for the user to choose to replace none to all of the initial symbols. Applicant further stated that the feature of multiple symbol columns and rows distinguishes the instant invention from electronic poker gaming apparatuses – and makes the instant invention a slot machine. Applicant agreed to consider the language "simulated re-spin" for the incorporation into*

(A fuller description, if necessary, and a copy of the amendments, if available, which the examiner agreed would render the claims allowable *the* must be attached. Also, where no copy of the amendments which would render the claims allowable is available, a summary thereof must be *independent* attached.) *claims.*

1. ☒ It is not necessary for applicant to provide a separate record of the substance of the interview.

**The '477 patent file history (Appx1041)**

Dietz thereafter submitted a written response and amendment on July 2, 2002, further elaborating on his argument that ***all*** of his claims (including application claim 33 that issued as claim 32) require a ***player*** to "choose to replace" initial displayed symbols for replacement.  (Appx1041.)  Dietz argued that changing "from none to all" to "at least one to all" was "unduly limiting" and would not capture the full scope of his "true invention" because, for example, "none of the slot machine prior art allowed the ***player*** to individually pick and choose from [Dietz's] range of replacement capabilities."  (Appx1058-1059 (emphasis added).)  Dietz continued that, in his alleged invention, at one end of the range "the ***player*** could chose [*sic*] no symbols for replacement" and at the other end of the range "the ***player*** could choose all of the symbols for replacement."  (Appx1059 (emphases added).)  Dietz then expressly represented that "this '***freedom of choice***' is an ***important distinction*** between [his] invention and the prior art."  (*Id.* (second emphasis added).)

52

Dietz continued that the examiner "correctly notes that if the player does not replace any of the initially drawn symbols, [Dietz's] game will behave much like a regular slot machine." (*Id.*) Dietz argued, however, that "the ***important difference*** is that, in [his] game, the ***player*** has been given a choice he or she would not have in a regular slot machine game." (*Id.* (emphases added).) Dietz argued that in all of his "***claims***" (including application claim 33 that issued as claim 32), "the ***player*** in [Dietz's] game has been allowed to designate a chosen number, from none to all, of said initially displayed symbols for replacement." (*Id.* (emphasis added).) The relevant portion of Dietz's response is reproduced below.

> The Examiner correctly notes that if the player does not replace any of the initially drawn symbols, Applicant's game will behave much like a regular slot machine. Nonetheless, the important difference is that, in Applicant's game, the player has been given a *choice* he or she would not have in a regular slot machine game. As recited in Applicant's claims, the player in Applicant's game has been *allowed* to designate a chosen number, from none to all, of said initially displayed symbols for replacement. Applicant submits that the "freedom of choice" allowed by Applicant's slot machine is simply not present in any of the prior art slot machine games.

**The '477 patent file history (Appx1059)**

In other words, the dispute between Dietz and the examiner was whether the player could choose to designate "none" of the initial symbols for replacement (as Dietz wanted) or whether the player must designate at least one of the initial symbol for replacement (as the examiner required for allowance). (*Id.*) There was never any doubt or question that it is the player that designates initial displayed symbols

for replacement.  (*Id.*)

Likewise, there is no doubt that Dietz's above arguments and representations were directed to application claim 33 (issued claim 32) because, immediately after Dietz made the arguments and representations, he stated that, "in the interest of expediting prosecution," he would nonetheless incorporate the examiner's recommended "one to all" limitation into application claim 33.  (*Id.*)  The examiner then proceeded to allow application claim 33 (issued claim 32).  (Appx. 1074.)

Rembrandt disingenuously argues throughout its brief that the Patent Office's allowance of application claim 33 (issued claim 32) purportedly had nothing to do with player designation.  The examiner's allowance of application claim 33 (issued claim 32) had ***everything*** to do with player designation and, more particularly, Dietz's agreement to limit application claim 33 (issued claim 32) to requiring a ***player*** to designate at least one initial displayed symbol for replacement, as opposed to the broader "none" limitation Dietz wanted.  (Appx1059 and Appx1074.)

Rembrandt also incorrectly argues that Dietz's representations during prosecution purportedly do not identify or restrict who or what designates symbols for replacement.  (ECF No. 16 at 53.)  Rembrandt again ignores the clear and unmistakable disclaimers Dietz made during the examiner interview on June 19, 2002, and again in his July 2, 2002, response and amendment.  (Appx1040-1041 and Appx1043-1065.)  Indeed, Dietz could not have identified who or what designates

symbols for replacement any clearer than he did in his July 2, 2002, arguments and representations.  (Appx1059.)  It is the player:

> the ***important difference*** is that, in Applicant's game, ***the player has been given a choice*** he or she would not have in a regular slot machine game.  As recited in ***Applicant's claims*** [which includes application claim 33], ***the player in Applicant's game has been allowed to designate*** a chosen number, from none to all, of said initially displayed symbols for replacement.  Applicant submits that the "***freedom of choice***" allowed by Applicant's slot machine is simply not present in any of the prior art slot machine games.

(*Id.* (emphasis added).)

Rembrandt also incorrectly contends that Dietz's arguments concerning the patentability of claim 32 during prosecution "did not address player designation." (ECF No. 16 at 53-55.)  As detailed above, Dietz's arguments and representations concerning the patentability of all of his claims, including claim 32, were premised entirely on the player, as opposed to the machine itself, designating initial displayed symbols for replacement.  (Appx1059.)  Although Dietz believed the full scope of his alleged invention allowed the player to select "none" of the initial displayed symbols for replacement, Dietz agreed to limit application claim 33 (issued claim 32) to a player designating at least one of the initial displayed symbols for

replacement.  (*Id.*)  Dietz then continued to prosecute other claims to obtain the "none to all" limitation, which Dietz ultimately did by adding "touch screen" limitations to the other claims.  (*See* Statement of the Facts Section II.B.4.)

Rembrandt's fallback position argues that the "novel feature" of claim 32 is "single symbol respin, not player designation," and that the "from one to all" language captures the "single symbol respin feature" the examiner found patentable in claim 32 during prosecution.  (ECF No. 16 at 54.)  That argument is disingenuous.

The "designating" limitation in claim 32 entailed two points of contention at the District Court: (1) whether a player must designate initial displayed symbols for replacement (the issue on appeal), and (2) whether the "from one to all" language means "from one to all" (as the District Court correctly found), or whether it means "at least one individual (single) symbol" (as Rembrandt argued to the District Court).

Rembrandt's Statement of Issues on Appeal is expressly limited to the first point – *i.e.*, whether the district court erred "by requiring that [the designating step] be carried out by a player."  (ECF No. 16 at 10).  This is not surprising because Rembrandt conceded the second point (the "from one to all" language) when pressed by the District Court at the claim construction hearing.  (Appx1339-1341.)

Nevertheless, in the last five pages of its Opening Brief, Rembrandt attempts to interject the second point, regarding the "from one to all" language, on appeal. Putting aside the fact that Rembrandt already conceded this point at the District

Court (*id.*),[3] a review of the entire prosecution history shows why Rembrandt's position is wrong. The examiner gave Dietz an opportunity to add an "individual" or "single" symbol replacement limitation to claim 32, but Dietz rejected the examiner's invitation. (Appx1031-1032.) Dietz first amended the original method claims 1 and 18 to recite that the symbols are in "separate boxes," which Dietz argued captured the concept of allowing a player to designate single symbols for replacement (as opposed to a player designating entire rows or columns of symbols for replacement). (Appx1013-1015.) Dietz, however, did not add that "separate boxes" limitation to application claim 33 (issued claim 32). (Appx1016.)

In response, the examiner explained that the "separate boxes" limitation Dietz added to application claims 1 and 18 did not capture the concept of allowing a player to designate single symbols for replacement (as opposed to a player designating entire rows or columns of symbols for replacement). (Appx1031.) The examiner then advised that Dietz could amend his claims to capture the concept of allowing a

_____

[3] That Rembrandt did not expressly challenge the District Court's from "one to all" construction on appeal, yet attempts to raise the issue at the end of its Opening Brief, is all telling. The '477 Patent is invalid under the District Court's "from one to all" construction. Rembrandt conceded the "from one to all" language at the claim construction hearing, and then sought judgment of non-infringement against itself before Defendants-Appellees had an opportunity to seek judgment of invalidity. (*See* No. 2:12-cv-00775, ECF No. 187.) On appeal, Rembrandt has not and cannot expressly challenge the "from one to all" construction in view of its concessions before the District Court, and, instead, attempts to backdoor the issue at the end of its Opening Brief.

player to designate single symbols for replacement (as opposed to a player designating entire rows or columns of symbols for replacement). (Appx1031-1032.) Specifically, the examiner recommended that Dietz amend his claims to require the "respin of symbols that are in the separate boxes" and that Dietz change "none to all" to "at least one to all." (*Id*.) For application claim 33 (issued claim 32), Dietz rejected the examiner's suggestion of requiring the "respin of symbols that are in the separate boxes." Instead, Dietz agreed to limit application claim 33 (issued claim 32) to a player designating at least one of the initial displayed symbols for replacement, which could include designating entire columns or rows. (Appx1059.) Dietz then continued the prosecution of other claims to try to capture the "individual" or "single" symbol replacement limitation.

Rembrandt also relies on the *ex parte* reexamination prosecution history, but it does not help Rembrandt. (ECF No. at 55-57.) If anything, it supports affirming the District Court's constructions because, as explained above, the reexamination examiner rejected Rembrandt's argument that issued claim 32 contains an "individual" or "single" symbol replacement limitation. (Appx548-552.)

In any event, the Patent Office uses a different and broader claim construction standard than the *Phillips* standard. *Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct. 2131, 2144 (2016) (affirming Patent Office's use of "broadest reasonable construction" standard instead of the *Phillips* standard). Here, there is no indication

anywhere in the reexamination file history that the examiner considered the Federal Circuit's claim construction standard for district court litigation, and there is no indication the examiner considered, or even knew about, Dietz's specification and prosecution disclaimers discussed above.

Moreover, the PTAB overruled the examiner with respect to claim 32 on appeal.  (Appx 1125-1126.)  In its decision, the PTAB panel, which consisted of three administrative patent judges, stated that Dietz "invented an electronic slot machine ... which allows a *player* to completely replace up to all of the initial symbols displayed after the first draw in order to create, improve or even lose a winning combination."  (Appx1126 (emphasis added).)  To the extent this Court considers the reexamination file history, the Court should look to the final decision from the PTAB, not the examiner's decision that was reversed.  (*Id*.)

Plaintiff's reliance on the unpublished, non-precedential *St. Clair* opinion is misplaced.  (ECF No. 16 at 57.)  In that case, the disputed claims terms were originally construed by a court in a first lawsuit.  *St. Clair Intellectual Prop. Consultants, Inc. v. Canon Inc.*, 412 F. App'x 270, 275-76 (Fed. Cir. 2011) (unpub.). In a subsequent reexamination, five different examiners expressly considered and rejected the district court's interpretation of the claim terms.  *Id*. at 276.  In a later lawsuit, this Court considered both the construction adopted by the first district court and the construction adopted by the five examiners during reexamination.  *Id*.  After

considering the intrinsic evidence, and applying the correct legal standard for district court litigation, this Court construed the claim terms consistent with the examiners. *Id*. The *St. Clair* case, therefore, is much different than this case and it has no application to the issues in this appeal.

For all the reasons set forth above, the prosecution history contains a clear and unmistakable disclaimer requiring a player to designate initial displayed symbols for replacement. The District Court should be affirmed for this additional reason.

## II. THE DISTRICT COURT CORRECTLY ENTERED FINAL JUDGMENT OF NON-INFRINGEMENT

The District Court's correct construction of the "designating" step is case dispositive because it is undisputed that none of Defendants-Appellees' accused slot machines allows a player to designate any symbols for replacement, let alone initial displayed symbols. (Appx326; Appx1816-1819.) For that reason, after the District Court entered its claim construction order, Rembrandt stipulated to final judgment of non-infringement. (Appx1816-1819; Appx10-11.)

Because the District Court's construction of the "designating" step is correct, the District Court's entry of final judgment of non-infringement should also be affirmed. *Cephalon, Inc. v. Abraxis Bioscience, LLC*, 618 F. App'x 663, 667 (Fed. Cir. 2015) (unpub.) (affirming entry of final judgment of non-infringement where plaintiff stipulated to non-infringement based on district court's claim construction that was affirmed on appeal).

60

## **CONCLUSION**

For the foregoing reasons, the District Court's construction of the "designating" step in claim 32 of the '477 patent is correct and its opinion should be affirmed.


Dated:  February 3, 2017                Respectfully submitted,

                                         /s/ Timothy C. Meece
                                         Timothy C. Meece
                                         V. Bryan Medlock, Jr.
                                         Michael J. Harris
                                         Audra C. Eidem Heinze
                                         BANNER & WITCOFF, LTD.
                                         10 South Wacker Drive, Suite 3000
                                         Chicago, Illinois 60606
                                         Telephone: 312-463-5000
                                         *Attorneys for Defendants-Appellees*

                                         David P. Enzminger
                                         WINSTON & STRAWN LLP
                                         275 Middlefield Road, Suite 205
                                         Menlo Park, California 94025
                                         Telephone: 650-858-6500
                                         *Attorney for Defendants-Appellees Boyd*
                                         *Gaming Corp., and LVGV, LLC*

                                         Patrick M. McCarthy
                                         HOWARD & HOWARD ATTORNEYS PLLC
                                         2950 South State Street, Suite 360
                                         Ann Arbor, Michigan 48104
                                         Telephone: 734-222-1483
                                         *Attorney for Defendants-Appellees Boyd*
                                         *Gaming Corp., and LVGV, LLC*

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. Cir. R. 32(a). This brief contains 13,717 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b).  As permitted by Federal Rule of Appellate Procedure 32(g)(1), the undersigned has relied upon the word count feature of the word-processing system used to prepare this brief for the word count above.

The brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally-spaced typeface using Microsoft Word 2010 in 14-point Times New Roman type.

Dated:  February 3, 2017            Respectfully submitted,

/s/ Timothy C. Meece
Timothy C. Meece
BANNER & WITCOFF, LTD.
10 South Wacker Drive, Suite 3000
Chicago, Illinois 60606
Telephone: 312-463-5000

*Attorneys for Defendants-Appellees*

## <u>CERTIFICATE OF SERVICE</u>

I, Rose E. Olejniczak, being duly sworn according to law and being over the age of 18, upon my oath deposes and states that:

Counsel Press was retained by Banner & Witcoff, Ltd., Counsel for Defendants-Appellees, to print this document. I am an employee of Counsel Press.

On February 3, 2017, Banner & Witcoff, Ltd. authorized me to electronically file the foregoing Brief of Defendants-Appellees with the Clerk of the Federal Circuit using the CM/ECF System, which will serve e-mail notice of such filing on the following attorneys:

Rachel C. Hughey
Christopher C. Davis
Rachel Zimmerman Scobie
Christopher J. Sorenson
Emily Wessels
Merchant & Gould, P.C.
80 S. Eighth St., 3200 IDS Center
Minneapolis, MN 55402
(612) 332-5300
rhughey@merchantgould.com
cdavis@merchantgould.com
rzimmerman@merchantgould.com
csorenson@merchantgould.com
ewessels@merchantgould.com

Jeffrey Blake
Merchant & Gould, P.C.
191 Peachtree Street NE, Suite 3800
Atlanta, GA 30303
(404) 954-5100
jblake@merchantgould.com

Upon acceptance by the Court of the e-filed document, six paper copies of the brief will be filed with the Court, via Federal Express, within the time provided in the Court's rules.

February 3, 2017                    /s/  Rose E. Olejniczak
                                    Rose E. Olejniczak